Paul D. Ruprecht (OSB #132762)
Western Watersheds Project
PO Box 12356
Reno, NV 89510
(208) 421-4637
paul@westernwatersheds.org

David H. Becker (OSB #081507)
Law Office of David H. Becker, LLC
833 SE Main Street # 302
Portland, Oregon 97214
(503) 388-9160
davebeckerlaw@gmail.com

Attorneys for Plaintiff

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

### MEDFORD DIVISION

| | |
|---|---|
| WESTERN WATERSHEDS PROJECT, | Case No.: 1:17-cv-00069-CL (lead) <br> Case No.: 1:17-cv-00098-CL (trailing) <br> Case No.: 1:17-cv-000468-CL (trailing) |
| Plaintiff, | Case No.: 1:17-cv-000531-CL (trailing) |
| v. | |
| UNITED STATES FISH AND WILDLIFE SERVICE, | **RESPONSE IN OPPOSITION TO DEFENDANT-INTERVENORS'** |
| Defendant, | **MOTION TO STRIKE (ECF NO. 130 IN CASE NO. 1:17-cv-00069-CL)** |
| MICHAEL BYRNE, et al., | |
| Defendant-Intervenors. | |

# INTRODUCTION

Plaintiff Western Watersheds Project (WWP) filed its motion for summary judgment and supporting memorandum in this case, ECF No. 98, arguing that Defendant U.S. Fish and Wildlife Service (the Service) violated the National Environmental Policy Act (NEPA), the National Wildlife Refuge System Administration Act, as amended by the Refuge Improvement Act (Refuge Act), and the Kuchel Act in authorizing livestock grazing on the Clear Lake National Wildlife Refuge. As relevant here, WWP claims that the Service's Klamath Comprehensive Conservation Plan (CCP) and Environmental Impact Statement (EIS) are deficient for failing to adequately disclose and evaluate harmful effects from commercial livestock grazing in and around the Clear Lake Refuge on several rare native species, including Greater sage-grouse and endangered Lost River and shortnose suckers, and that the EIS does not support the Service's authorization of increased livestock grazing on the Clear Lake Refuge in the Record of Decision (ROD) for the CCP.

To help explain the gaps in the Service's analysis and its failure to consider several important factors, WWP filed several declarations and exhibits that WWP asked the Court to consider in support of its motion for summary judgment, including the Declaration of Dr. Clait Braun, ECF Nos. 99 and 99-1, the Declaration of Michael Connor, Ph.D., ECF Nos. 100 and 100-1, and Exhibit B to the motion for summary judgment, ECF No. 98-2. Defendant-Intervenors Tulelake Irrigation District et al. moved to strike these materials, or portions thereof, as well as the sections of WWP's brief citing them. ECF Nos. 130, 130-1 at 3–4. Because all of these declarations and exhibits fit within recognized exceptions to the general rule that the Court's review should be based on the agency's administrative record, or are otherwise admissible, the Court should deny Defendant-Intervenors' motion to strike.

RESPONSE IN OPPOSITION TO MOTION TO STRIKE—1

**ARGUMENT**

**I.   STANDARD OF REVIEW**

For claims brought pursuant to the Administrative Procedures Act (APA) § 706(2)(A), the informed capacity of a court sitting in review of agency action would be frustrated if courts were unconditionally restricted to the agency's designated record. *See Nat'l Audubon Soc'y v. U.S. Forest Serv.*, 46 F.3d 1437, 1447 (9th Cir. 1993). A court reviewing agency action under the APA must set aside the action if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). "Although the arbitrary and capricious standard is a 'narrow one,' [a court is] required to 'engage in a substantial inquiry[,] . . . a thorough, probing, in-depth review.'" *Native Ecosystems Council v. U.S. Forest Serv.*, 418 F.3d 953, 960 (9th Cir. 2005) (quoting *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 415–16 (1971), *overruled on other grounds by Califano v. Sanders*, 430 U.S. 99, 105 (1977)).

A "court cannot adequately discharge its duty to engage in a 'substantial inquiry' if it is required to take the agency's word that it considered relevant matters." *ASARCO, Inc. v. EPA*, 616 F.2d 1153, 1160 (9th Cir. 1980). Thus "it is both unrealistic and unwise to 'straightjacket' the reviewing court with the administrative record. It will often be impossible, especially when highly technical matters are involved, for the court to determine whether the agency took into consideration all relevant factors unless it looks outside the record to determine what matters the agency should have considered but did not." *Id*.

To assure that courts are able to engage in the requisite in-depth review of agency decisions and adjudicate whether the agency took a "hard look" at all relevant factors, the Ninth Circuit has long recognized several exceptions to the general rule that judicial review of agency

action should be limited to the administrative record. Accordingly, this Court may consider extra-record evidence:

> (1) if admission is necessary to determine "whether the agency has considered all relevant factors and has explained its decision," (2) if "the agency has relied on documents not in the record," (3) "when supplementing the record is necessary to explain technical terms or complex subject matter," or (4) "when plaintiffs make a showing of agency bad faith."

*Lands Council v. Powell*, 395 F.3d 1019, 1030 (9th Cir. 2005) (quoting *Sw. Ctr. for Biol. Diversity v. U.S. Forest Serv.*, 100 F.3d 1443, 1450 (9th Cir. 1996)). These exceptions "operate to identify and plug holes in the administrative record." *Id.*; *see also Earth Island Inst. v. U.S. Forest Serv.*, 442 F.3d 1147, 1162 (9th Cir. 2006) ("We allow extra-record materials if necessary to determine whether the agency has considered all relevant factors and has explained its decision" (internal quotation omitted)); *Thompson v. U.S. Dept. of Labor*, 885 F.2d 551, 555 (9th Cir. 1989) (a reviewing court may go outside the administrative record "to determine whether the agency considered all the relevant factors"); *Animal Def. Council v. Hodel*, 840 F.2d 1432, 1436–47 (9th Cir. 1988), *as modified by* 867 F.2d 1244 (9th Cir. 1989) ("an allegation that an EIS has failed to mention a serious environmental consequence may be sufficient to permit the introduction of new evidence outside of the administrative record"); *Friends of the Earth v. Hintz*, 800 F.2d 822 (9th Cir. 1986) (citing *ASARCO*, 616 F.2d at 1159) ("But exceptions exist to the rule that review of agency action is limited to the administrative record. A court may consider evidence outside the administrative record as necessary to explain agency action").

## II.  THE BRAUN DECLARATION IS SQUARELY WITHIN RECOGNIZED EXCEPTIONS TO THE RECORD RULE.

As it noted in its summary judgment brief, WWP filed the Declaration of Dr. Clait Braun in order to "explain[] that the Service omitted consideration of important factors in its authorization of grazing at Clear Lake, reiterate[] comments by Dr. Braun that were before the

Service when it issued the CCP, and summarize[] other scientific literature that also appears in the record." ECF No. 98 at 8, n.5. Dr. Braun is a biologist with over 40 years' experience studying the sage-grouse. ECF No. 99, ¶¶ 3–9. Specifically, WWP filed the Braun Declaration to describe—in a single document, for the Court's convenience—significant factors related to harm to sage-grouse from the Service's authorized livestock grazing that the Service failed to consider or explain in its Klamath CCP EIS or ROD, and to help explain the gaps in the Service's analysis. *See Lands Council*, 395 F.3d at 1030. The declaration also helps explain complex subject matter regarding the consequences of livestock grazing in sage-grouse habitats. It is not offered as a new rationalization to attack the Service's decision, but rather to summarize for the Court the important factors the Service failed to address in its decision. Therefore, the Court should consider the Braun Declaration in resolving WWP's motion for summary judgment.

> **A. The Braun Declaration Shows that the Service Ignored Serious Risks to Sage-Grouse and Did Not Adequately Explain its Decision to Significantly Increase Grazing at Clear Lake Refuge.**

The Declaration of Dr. Braun satisfies the first exception to the record rule because it demonstrates that the Service's EIS and ROD failed to disclose and analyze several important factors related to impacts of livestock grazing at Clear Lake Refuge to the nearly-extirpated sage-grouse population that inhabits the Refuge and surrounding Modoc National Forest.

For instance, WWP argued in its summary judgment brief that the Service violated NEPA and the Refuge Act by failing to disclose and analyze harms to nesting and breeding sage-grouse from grazing on the Clear Lake "U." ECF No. 98 at 23–25. Sage-grouse nest and breed on the "U"; in fact, it is the *only* place where they perform their yearly breeding activities on the population's sole remaining lek. *See id*. at 10, 24. However, the EIS contains virtually no analysis of impacts to sage-grouse from grazing on the "U," *see id*. at 23–25, and Dr. Braun's

declaration explains the substantial risks to breeding and nesting sage-grouse on the "U" that the Service failed to disclose to the public or evaluate in the EIS. ECF No. 99, ¶¶ 16, 17.

For example, the Braun Declaration summarizes scientific literature that is in the administrative record, and thus before the Service when it made its decision, which describes that intensive spring grazing that reduces the height and density of grasses and forbs removes food and hiding cover for nesting sage-grouse hens and chicks. *Id*. The Braun Declaration further explains that fall grazing also removes cover for early nesting hens the following year. *Id*. And allowance of grazing in *both* spring and fall in a given year, as the Service approved on the Clear Lake "U," subjects nesting grouse to the negative impacts of both grazing seasons—another factor the Service failed to consider, as WWP argues in support of summary judgment. *Id*.; ECF No. 98 at 23–25. This information is necessary to inform the Court's review of a critical and relevant risk to sage-grouse that the Service ignored in its analysis.

Further, the Braun Declaration explains the importance of the neighboring Modoc National Forest lands to the Clear Lake sage-grouse population—and the grazing there that is a cumulative impact, when added to the grazing authorized on the Refuge itself, which the Service is obligated to disclose and evaluate under NEPA. ECF No. 99 at ¶¶ 20–22. Livestock grazing is authorized by the Forest Service on these lands, in addition to the grazing that the Service approved on the Clear Lake Refuge. *See* ECF No. 98 at 12. But the Service in its EIS simply did not consider the harm to sage-grouse and sage-grouse habitat from grazing authorized by the Forest Service on the Modoc National Forest, or the significance of the additive impacts to sage-grouse from that grazing. *Id*. at 28–30. As WWP argues, this omission violates NEPA and the Refuge Act. *Id*. The Braun Declaration describes that, because the Service failed to consider impacts from grazing on the portions of the sage-grouse range outside the Refuge, it

"overlook[ed] a critical piece of the conservation and recovery of the Clear Lake sage-grouse." ECF No. 99 at ¶ 22. Again, the Braun Declaration provides the Court with an explanation of the gaps in the Service's analysis of the environmental consequences of the agency's authorization of grazing at Clear Lake Refuge.

Finally, Dr. Braun in his declaration provides information that demonstrates the Service's EIS did not consider relevant aspects of its "restoration" grazing expansion on the Clear Lake "U," namely, scientific literature that suggests intensive spring grazing on the "U" will cause invasive grasses to persist rather than decrease. ECF No. 99 at ¶ 18. Without this information, the Court would be forced to make its decision based solely on the incomplete, and inaccurate, analysis provided by the agency, and cannot fairly determine whether the Service *did* consider all relevant factors and explain its decision. *See* ECF No. 98 at 31–34 (WWP summary judgment memorandum discussing the EIS's failure to rationally justify increased grazing on the "U"). Instead, the Court should consider the Braun Declaration to fill gaps in the record with respect to the agency's inadequate consideration of this issue as well.

## B. The Braun Declaration Helps Clarify and Explain Complex Subject Matter.

At the same time that it describes relevant issues related to sage-grouse and grazing at Clear Lake Refuge, which the Service ignored or inadequately analyzed, the Braun Declaration summarizes and distills complex scientific literature that is part of the agency's administrative record. The Ninth Circuit consistently has held that where, as here, a case involves "technical terms or subject matter," supplementation of the record is appropriate to provide "explanation or clarification of" those terms and matters. *Pub. Pwr. Council v. Johnson*, 674 F.2d 791, 794 (9th Cir. 1982).

First, Dr. Braun summarizes several studies discussing the ways that livestock grazing

impacts sage-grouse life history and habitat requirements, particularly with respect to breeding and nesting. ECF No. 99 at ¶ 17. His summary distills for the Court and the parties the portions of these scientific papers that are relevant to the Service's approval of livestock grazing in sage-grouse nesting habitat, such as the Clear Lake "U." These issues are not analyzed anywhere in the EIS because the Service erroneously claimed sage-grouse do not nest in the areas where spring grazing would occur, and it completely failed to address the impacts of fall grazing. *See* ECF No. 98 at 23–25.

Likewise, Dr. Braun provides a summary of other articles in the record that discuss the implications of using livestock grazing to target non-native annual grass species like cheatgrass and medusahead. ECF No. 99 at ¶ 18. This section of the declaration also concisely addresses relevant points from those scientific papers, which are technical in nature, to aid the Court in its consideration of those issues.

These aspects of the Braun Declaration summarize and clarify complex subject matter central to this case, and also serve as "background information" that helps "explain agency action [when] . . . [t]he issues presented by [a] case are sufficiently complex." *ASARCO*, 616 F.2d at 1160; *see also Idaho Conserv. League v. Mumma*, 956 F.2d 1508, 1520, n.22 (9th Cir. 1992) (approving district court's consideration of extra-record affidavits to explain complex subject matter); *Env't Now! v. Espy*, 877 F. Supp. 1397, 1404 (E.D. Cal. 1994) (denying motion to strike expert declaration because it was "helpful in highlighting perceived deficiencies in the environmental review process, and explaining technical terms and complex subject matter"). Because the Service failed to address these issues in the EIS, Dr. Braun's declaration is necessary to help explain and clarify the complex subject matter and therefore is properly before the Court under the third record-review exception. *Lands Council*, 395 F.3d at 1030.

### C. The Braun Declaration Does Not Present Impermissible Opinion Testimony.

Defendant-Intervenors argue that the Braun Declaration presents post-decisional, opinion testimony. A fair reading of that declaration shows this not to be the case. The Braun Declaration is not advanced as "a new rationalization for either sustaining or attacking an agency's decision," but rather to help the Court understand the important factors that the Service failed to consider in its environmental analysis. *Sw. Ctr.*, 100 F.3d at 1450. The facts and scientific literature that Dr. Braun summarizes all existed at the time the Service approved the ROD and, indeed, were before the Service when it made its decision. Declaration testimony elucidating pre-decisional facts contemporaneous with a motion for summary judgment does not fall within the "post-decisional" facts and data prohibition. *See, e.g.*, *Nat'l Audubon Soc'y v. U.S. Forest Serv.*, 46 F.3d 1437, 1446–47 (9th Cir. 1993) (considering declarations describing roadless nature of proposed timber sale areas and the declarant's field review of the sale areas); *Or. Natural Desert Ass'n v. Rasmussen*, 451 F. Supp. 2d 1202, 1208 (D. Or. 2006) ("Miller's testimony addresses whether BLM considered all relevant factors in its NEPA analysis, including the extent of wilderness areas in the East-West Gulch and, therefore, is an exception to the rule against considering extra-record materials on the cross-motions for summary judgment").

Dr. Braun's declaration describes facts and scientific literature that were available to (but not considered by) the Service at the time it approved the ROD for the CCP regarding the harmful effects of spring grazing on sage-grouse nesting and breeding, the detrimental effects of "twice-over" grazing in the spring and fall in reducing plant communities essential for sage-grouse in the following year, the lack of any scientific basis for use of grazing as an invasive plant management tool, and the cumulative effects of grazing in the Modoc National Forest and the Clear Lake Refuge on the small remnant population of sage-grouse that breeds on the

Refuge. ECF No. 99 at ¶¶ 16–23. This distinguishes the Braun Declaration from the declarations at issue in the *San Luis* cases cited by Defendant-Intervenors. *See* ECF No. 130 at 12–13 (citing *San Luis & Delta-Mendota Water Authority v. Locke*, 776 F.3d 971 (9th Cir. 2016) and *San Luis & Delta-Mendota Water Authority v. Jewell*, 747 F.3d 581 (9th Cir. 2014)). In those cases, the Ninth Circuit held that the district court improperly appointed four experts to help it understand technical and scientific aspects of a National Marine Fisheries Service biological opinion, improperly considered "dozens of extra-record declarations . . . comprising thousands of pages of scientific opinion," and, importantly, relied upon these many experts "to question the wisdom of [the agency's] judgments." 776 F.3d at 992–93; 747 F.3d at 603.

WWP does not ask the Court to appoint experts and does not offer the Braun Declaration for the Court to "judge the wisdom" of the Service's grazing authorization. Again, as the Braun Declaration makes clear, it is offered to explain how grazing adversely affects several important aspects of the sage-grouse life cycle on the Clear Lake Refuge and how the Service failed to consider these factors in authorizing an increase in grazing on the Refuge. ECF No. 99 at ¶ 2 (describing the declaration's purpose "to document and describe several important factors that the [Service] failed to consider or evaluate in its [EIS] and [CCP]," including, "specifically, in its approval of livestock grazing at Clear Lake National Wildlife Refuge"). The summary declaration that Dr. Braun prepared to synthesize his previous comments and the relevant scientific literature is intended for the Court's convenience to present the salient issues in a single document, justifying the Court's consideration of the declaration.

Finally, Defendant-Intervenors' argument ignores the obligation WWP has, under the APA, of proving a negative—that is, that the Service failed to consider an important factor or to fully explicate its course of conduct or grounds for its decision. *See Love v. Thomas*, 858 F.2d

1347, 1356 (9th Cir. 1988) (to conduct judicial review properly, "[t]he court may find it necessary to review additional material to explain the basis of the agency's action and the factors the agency considered. Moreover, the court may consider, particularly in highly technical areas, substantive evidence going to the merits of the agency's action where such evidence is necessary as background to determine the sufficiency of the agency's consideration.") (citation omitted). In some instances—such as here—it is necessary for a plaintiff challenging agency action to proffer a declaration that explains the complex subject matter and the specific gaps in the agency's analysis to carry its burden of demonstrating that the agency's action failed to consider important factors and thus is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. *See Earth Island Inst.*, 442 F.3d at 1162 ("We allow extra-record materials if necessary to determine whether the agency has considered all relevant factors and has explained its decision." (internal quotation omitted)); *ASARCO*, 616 F.2d at 1160 ("[i]t will often be impossible, especially when highly technical matters are involved, for the court to determine whether the agency took into consideration all relevant factors unless it looks outside the record to determine what matters the agency should have considered but did not."). The Court should consider the Braun Declaration in evaluating WWP's motion for summary judgment.

### III. THE CONNOR DECLARATION AND EXHIBIT B TO WWP'S MOTION ARE PROPERLY BEFORE THE COURT.

The Court should decline to strike Paragraphs 15–22 of the Connor Declaration, Exhibit 1 to the declaration, or Exhibit B to WWP's motion for summary judgment. The Connor Declaration is primarily submitted for standing purposes, while Paragraph 21 of the Connor Declaration and the exhibits are properly admitted under the first *Lands Council* exception. 395 F.3d at 1030.

//

### A. With Limited Exceptions, the Connor Declaration is Offered for Standing Only.

With the exception of Paragraph 21 and Exhibit 1, WWP submits the Declaration of Michael Connor, Ph.D. solely as part of its affirmative burden to demonstrate standing. Accordingly, WWP disavows reliance on the challenged Paragraphs 15–20 and 22 of the declaration for any other purpose. The Court should therefore decline to strike these paragraphs because WWP is entitled to rely on them to show standing. *See Klamath Siskiyou Wildlands Ctr. v. Bureau of Land Mgmt.*, No. 1:12-cv-1558-CL, 2014 WL 525116, at *4–5 (D. Or. Feb. 6, 2014) (citing *Envtl. Prot. Info. Ctr. v. Blackwell*, 389 F. Supp. 2d 1174, 1221 (N.D. Cal. 2004)) (declining to strike paragraphs in a declaration that plaintiffs submitted for standing purposes only).

### B. Paragraph 21 and Exhibit 1 to the Connor Declaration Should Be Admitted Under the First Exception to the Record Rule.

In Paragraph 21, the Connor Declaration describes a 1996 Biological Assessment (BA) and 1997 Biological Opinion (BO) (collectively "the 1997 BO") that the Service issued for livestock grazing on Modoc National Forest allotments surrounding Clear Lake Refuge that affects Lost River and shortnose suckers. ECF No. 100 at ¶ 21. Exhibit 1 to the Connor Declaration is the 1997 BO. ECF No. 100-1.

The Court should consider Paragraph 21 and Exhibit 1 because they are evidence of a significant issue that the Service did not analyze in its EIS—the impacts to the listed sucker species from livestock grazing in the Clear Lake watershed and tributaries where the suckers spawn. As WWP explained in its summary judgment brief, "the BO describes the harmful effects of grazing in those areas in detail." ECF No. 98 at 15. This issue is relevant to the Service's decision to authorize livestock grazing on the Clear Lake Refuge, and the Court's review,

because the grazing on the Modoc National Forest allotments[1] that contain these tributary streams is a clear cumulative impact—when added to the effects of grazing on the Refuge itself—to the endangered fish species that the Service was required to consider under NEPA. *Id*. at 25–27. Thus, Paragraph 21 and Exhibit 1 to the Connor Declaration qualify under the first exception because they demonstrate the Service's failure to consider the issue of cumulative impacts to listed suckers or adequately explain its decision to authorize grazing on Clear Lake Refuge that impacts suckers.

### C. Exhibit B to WWP's Motion for Summary Judgment Shows That the Service Failed to Consider the Cumulative Impacts to Suckers from Grazing on the Modoc National Forest Documented in the 1997 BO.

Exhibit B is a set of letters documenting the informal negotiations between WWP and the Service regarding the completeness of the administrative record in this case, including WWP's request that the Service include the 1997 BO in the record and the Service's refusal to do so. *See* ECF No. 98-2 at 6, 19 (addressing item 3(B)(xii)).

Defendant-Intervenors state in their motion to strike that WWP "offers no explanation as to why Exhibit B is attached to its motion or properly before the Court" and that WWP made "no reference to Exhibit B" in its memorandum. ECF 130 at 12. This is not true. In fact, WWP did explain the relevance of Exhibit B and its reasons for submitting it. ECF 98 at 15, n.9 (explaining the significance of the BO for illustrating the effects of grazing on suckers and the fact that Exhibit B demonstrates the Service did not consider it). WWP explained that the Service *admitted* in Exhibit B that it had not considered the effects on suckers described in the 1997 BO in developing the CCP. *Id*. (citing Exhibit B for the fact that "[t]he Service stated that it did not

---

[1] These allotments include the Tucker allotment, which is partially unfenced from the Refuge, and from which livestock annually invade the western shore of the Refuge, where they damage fragile shoreline habitat. ECF No. 98 at 12–13.

consider this BO in developing the CCP and refused to include it in the administrative record"); *see also* ECF No. 98-2 (Exhibit B) at 9 (stating "the Service did not rely on this information"). Because the 1997 BO is relevant and admissible under the first exception, as explained above, the Court should also admit Exhibit B, which documents the Service's admission that it did not consider it.

### IV. WWP FOLLOWED THE NORMAL PRACTICE IN THIS COURT OF SUBMITTING EXTRA-RECORD MATERIALS WITH ITS SUMMARY JUDGMENT FILING WITHOUT A FORMAL MOTION TO SUPPLEMENT.

Defendant-Intervenors incorrectly argue that WWP improperly failed to move the Court to supplement the record with the Braun and Connor Declarations and Exhibit B to WWP's Motion. ECF No. 130 at 4–5. To the contrary, WWP has requested the Court's consideration of those materials in accordance with the Court's May 16, 2017 Scheduling Order and consistent with the long-established standard practice in this Court.

The relevant Order in this case provides that the parties may "seek[] to supplement the record" at the time of summary judgment briefing. *See* May 16, 2017 Scheduling Order, ECF No. 37 at 4. The Order similarly recites that the parties may "ask the Court to consider" extra-record materials and "file any extra-record materials they wish the Court to consider . . . with their briefs." *Id*. at 2–3. Nowhere does the Order require the parties to formally *move* the Court to consider these materials. Defendant-Intervenors' assertion that the Court "directed" the parties to file motions to supplement misreads the Court's May 16, 2017 Scheduling Order and reflects an unfamiliarity with the prevailing practice for proffering extra-record evidence in the District of Oregon. ECF No. 130 at 3, 5.

The Order cites *Center for Biological Diversity v. Wagner* as an example of the Court's practice of considering extra-record materials filed with summary judgment briefing. ECF No.

37 at 3 (citing No. 08-302-CL, 2009 WL 2176049, at *7–9 (D. Or. Jun. 29, 2009)). In *Wagner*, the Court admitted and analyzed several post-decisional declarations containing extra-record evidence submitted by federal defendants. 2009 WL 2176049, at *7–9 (D. Or. Jun. 29, 2009), *report and recommendation adopted sub nom. Ctr. for Biological Diversity v. Wagner,* No. 08-302-CL, 2009 WL 2208023 (D. Or. July 22, 2009). Federal defendants filed those post-decisional declarations without any accompanying motion to supplement the administrative record or other formal requests for the Court to consider them. *See, e.g.*, ECF Nos. 99, 119 (cross motion for summary judgment and reply briefs); 100, 118 (Declarations of Michael B. Nevill) in *Wagner*, No. 08-302-CL.

Indeed, this Court's normal practice is to entertain proffers of extra-record materials in support of motions for summary judgment without requiring a motion to supplement. *See, e.g.*, *Soda Mountain Wilderness Council v. U.S. Bureau of Land Mgmt.*, No. 1:12-cv-001171-CL, 2013 WL 12120098, at *2–3 (D. Or. May 29, 2013), *report and recommendation adopted in part, rejected in part sub nom. Soda Mountain Wilderness Council v. U.S. Bureau of Land Mgmt.*, No. 1:12-cv-1171-CL, 2013 WL 4786242 (D. Or. Sept. 6, 2013) (taking judicial notice of extra-record declaration and other evidence presented by plaintiffs in a footnote in their summary judgment brief); *Concerned Friends of the Winema v. U.S. Forest Serv.*, No. 1:14-cv-737-CL, 2016 WL 10637010, at *14–15 (D. Or. Sept. 12, 2016), *report and recommendation adopted sub nom. Concerned Friends of Winema v. U.S. Forest Serv.*, No. 1:14-cv-00737-CL, 2017 WL 5957811 (D. Or. Jan. 18, 2017) (multiple extra-record declarations considered without motions to supplement); *Klamath Siskiyou Wildlands Ctr.*, 2014 WL 525116, at *4–5 (declining to consider declaration based on its irrelevance, but not because it was filed without an accompanying motion to supplement). This practice is consistent with the preference outlined in

the Local Rules for resolving evidentiary disputes at the same time as the merits of a motion for summary judgment. LR 56-1(b).

In sum, Defendant-Intervenors' objection to WWP's submission of extra-record evidence without a formal motion to supplement is contrary to this Court's local practice and the plain language of its May 16, 2017 Scheduling Order.

## CONCLUSION

For all the of the reasons stated, Plaintiff WWP respectfully requests that the Court deny Defendant-Intervenors' motion to strike, and consider the Braun and Connor Declarations and Exhibit B to WWP's motion for summary judgment, as well as WWP's supporting memorandum in its entirety, in ruling on WWP's motion for summary judgment. WWP also notes that this Court's Local Rules permit no reply briefing on evidentiary objections or motions to strike. LR 56-1(b).

Dated: July 6, 2018         Respectfully submitted,

                            s/ Paul D. Ruprecht
                            Paul D. Ruprecht (OSB #132762)
                            Western Watersheds Project

                            s/ David H. Becker
                            David H. Becker (OSB #081507)
                            Law Office of David H. Becker, LLC

                            Attorneys for Plaintiff WWP